Mr. Diehl, we're happy to hear your argument. Yes, ma'am. May it please the Court, David Diehl for Plaintiff Russell Brammer. This case concerns the misappropriation of an artistic work by a for-profit enterprise, which used the work without permission to entice customers to buy tickets to its international film festival. When used appropriately, fair use empowers courts to excuse infringement in some cases where the societal benefits of the infringement outweigh the cost to the copyright owner and society of doing so. In this case, Violent Hues did what is all too common, given the ease in which digital content can be copied in an online environment. They simply identified the image, they right-clicked the image, they copied and pasted the image, and they used it on their website. 17 U.S.C. 107, which is the federal statute that governs fair use, is written for a reason. It's short, it's sweet, it identifies not an extensive list of exceptions for fair use, but it's extensive enough that it gives the courts plenty of guidance to where and when fair use is appropriate. Specifically, Section 107 identifies criticism, comment, news reporting, scholarship, teaching, research. You'll likely hear both counsel go through the four factors of fair use, but they're important. They're important to note because they're there for different purposes. They have very different meanings, and different standards apply. Well, the Internet is a new medium, perhaps in your life, but certainly in mine, where there is more and more copying. So how do you suggest that we draw lines if we should conclude that there was not fair use here? Well, Your Honor, there are guidelines. Sorry? There are guidelines. I understand that, but we can't create something that is so broad that you can't even use the Internet, right? That's right, but the ease at which something can be copied doesn't affect Section 107. The fundamental standards are the same. The four aspects of fair use remain the same. They are universal, whether or not something is digital, whether or not it's a sculpture, whether or not it's a film. It is the way, as I was getting to, the four factors address different things. Transformative use addresses what use the defendant made of the artistic work. The second factor addresses what went into the work, purely from an artist's or an author's perspective. The market is kind of a combination of both. So there's nothing unique to copyright law just because something is in digital form. Photographs essentially are the same thing. If Appellee could have, or if Appellee had gone to a studio where this photograph was being sold and took a picture of it and then made a poster or an ad out of it, the argument would be the same. Still unfair, regardless of whether it's on the Internet or in real life. He did the same thing. I'm not exactly sure. I'm on your side. She's agreeing with you. I would say yes. I mean for this argument. So just move on then. What is represented in the photograph that was captured by Brammer is, you know, the defendant wants to call it historical or informational, but, you know, if we use that standard, then it's nearly impossible for a photographer to get out of that. I mean a photograph, whether or not it is a snapshot with a cell phone, or it is a highly engineered, artistic, you know, representation of what is in front of the camera that barely has anything to do with what an individual might have seen, it's still a photograph and it still represents what's there. And, therefore, a photograph is always going to be a representation of information that was in front of the camera. It's always going to be something that was there at that time and, therefore, historical. So how does a stock photo or a photo like that we have here differ from passing photos in social network among your friends? It doesn't. There are individuals, and that's the problem. The problem with a digital universe is that... So if I send you a photo, I'm a friend of yours, and I send you a photo and I say, look at this, and you send it on to your friend, you have violated my copyright? On paper, absolutely. The problem with... No. There has to be some, she has to have some market for the photograph or some reason to, it can't... I disagree. I disagree because... I'm not on your side anymore. Because... I don't know what to do for you. The digital environment now is, it's been set up by the way people treat the digital photographs today as something that is to be used and consumed now, today. Tomorrow, it's not worth anything. That's not what the copyright statute says. The copyright statute, there is no allowance or no limit on when an individual... I take that back. There is a limit of 72 years after the author is dead. Okay. Let's get away from the 72 years. I don't think it is applicable. Is your answer to our question only with respect to one of the elements? Are you saying there really would be a copyright? It seems to me that you could lose this case if there is no limitation on a photo sharing among friends, if that is a violation of the copyright laws, which is what I thought you said to me. If the scenario, and maybe I misunderstood what you said... Perhaps. But if the scenario you're describing is that people take photographs quick and easy with a cell phone and pass them on to your friends... Yes. ...then we're talking about a completely different fact pattern than what we're talking about in this case. To be sure, but what we need you to tease out for us is some principle that we can apply because we can't write something and put it in F-3rd and say there's a totally different fact pattern. That doesn't work. You have to do a legal analysis. Well... Okay, so you do that. The main difference with the scenario that you've described is that the author of the photograph is the one that's initiating the, not just the copy... Okay, no, but you didn't listen to all my hypothetical. I sent it to you, and then you sent it to one of your friends. So you are initiating my photo. I would argue that there is, along that chain, it's much more complex than I think we want to get into, but along that chain there is an implicit understanding among those individuals that none of them are concerned with copyright. And therefore, as long as it doesn't leave that group, then everyone is okay. On paper, when someone copies something, by statute, when an individual or an entity copies something without license or permission, it's a violation of the copyright statute. Okay. So we're talking about the fair use exception. So maybe you talk to me why it applies. I would have thought you would go to the factors of the fair use exception and say they do apply to that situation and they don't apply in the case at hand. But maybe you don't want to make that argument. I will, Your Honor. As the Court likely knows, the first and the fourth factors are by far the most important, with the fourth, the effect on the potential market, being noted by the Supreme Court as the most important. The defendant makes a lot about how this photograph was somehow transformed. Transformation in Campbell requires that something new, a different purpose, be made of the image. If a photograph, in this case, is used by a third party for the identical reason and purpose that the photograph was captured, then there's nothing transformative about it. Campbell was a seminal moment in copyright law history because the plaintiff took this classic song and turned it into something that was unrecognizable. Now, you could go through and you could tell that the song was being used, but Mr. Campbell turned it into something that was completely unrecognizable from the original. It added all this, it added sarcasm, it added political commentary. It barely resembled what the original was. In this case, they're nearly identical. The idea that something can be transformed because an individual says, well, I know the photographer, you know, wanted to use a photograph for this. And in this case, the defendant says it's somehow limited to just marketing his work, which is unbelievable on its face. But that narrow, the district court error, it narrowly accepted that reasoning by the defendant and then, on the opposite end, applied an equally restrictive, you know, boundaries for the defendant, which was, well, I'm not using it. I'm not using it to display my photography skills. After all, I'm not a photographer. I'm using it to supply information to individuals that are hopefully going to, you know, submit content to my film festival. That's just not the standard. The Prince cases are a great example of transformation as well. Because Mr. Prince happens to be a prolific copier, but also a lot of his cases have been in front of federal court, in the cases where he fundamentally transforms the original image, the original work, then courts have found fair use. When he copies wholesale the photograph or the image and then adds a little bit of writing underneath and calls it something different, or calls it transform, the court has failed to find fair use. I'll briefly touch on the fourth factor, which is a potential market for my client. My client is a young commercial photographer that hopefully has a long career ahead of him. The idea that an entity like Violet Hughes, which is in the business of using visual content as an organizer of this film festival, but also as a creator of this website, a commercial website that has nothing but the goal of enticing users, enticing visitors to come to his film festival, the idea that that market is somehow detached from the potential market of individuals like my client is preposterous. That's exactly why my client takes photographs. My client takes photographs like thousands of other commercial photographers, not necessarily with something in mind when he's taking it. Artists of all kinds, they use their time and their efforts to create something beautiful or edgy or funny. But that doesn't mean that someone can come along and ascribe some other kind of meaning to it, and therefore it takes it out of the market. A perfect example of a market being very open-ended is a photograph of a well-known person, whether it's a politician or someone in the news. When that person is alive and young and in the news, that photograph has a very straightforward application. When that person dies, that photograph can be used the same way. It's still a depiction of that individual. It's still well-executed and humble and makes the subject look however the photographer wanted him or her to look. But the photograph is used as a photograph and as a depiction of that individual, but 10 or 20 years later. Just because the market for that image was limited when the photograph was taken, doesn't preclude any other potential market for that image years to come. Thank you very much. Your time has expired. Do you want to take some of your colleagues' rebuttal? No, ma'am. Okay. Tom Weir. Hey, police court. Tom Weir on behalf of Appalee Violent Use Productions. The district court below correctly applied binding precedent to the entirely undisputed facts before it and correctly determined that the use at issue here was fair use under Section 107 of the Copyright Act. As we state in our briefs, the district court was correct to find that each of the four fair use factors weighed in favor of fair use and weighed in favor of violent use here. Okay. So how is this transformative? So it's transformative because it was used for a different purpose and in a different function than the original photo. Often in these cases you look at the two side by side and people spend a lot of time telling us, well, something's changed a little bit. The only change is the cropping. The only change, right? The only physical change, that's correct. Okay. But this court has held that you do not need to make a physical change to the work in order to find that the secondary use is transformative. And that was the case here and that was the case, for instance, in the two who shot cases. And the purpose was what? Mr. Brammer's original purpose was, you're talking about my client's purpose? Your client. You said it was transformative because it's for a different purpose, used for a different purpose. Correct. So the purpose as part of the secondary work was to inform visitors to this film festival about places in the Washington, D.C. area. And how is that informative? So the site itself and the site is in the joint appendix. Right. I'm looking at it. I believe it was a dozen areas in Washington, D.C. that someone might want to visit while they're there for the film festival. Now did the FLE make money from the music festival? From the festival overall, yes. Not from the specific use at issue here. Well, what's the website for? Well, the specific page at issue here was to be used as a reference guide. The page of the website. What is the website for? The overall website is to provide information about the film festival, some of which... And to sell tickets? Some parts of it would be to sell tickets. That's correct. Okay. That's all I need to know. Your Honor, so that gets to the commerciality aspect of the first factor. Yes, it does. And counsel for Mr. Brammer noted that my client was for profit. And as Your Honor just said, the festival as a whole was a profit-making enterprise. But that is not the test that this Court has said that has laid out as to whether a use is commercial or non-commercial under the first factor. And the key question is whether a secondary user gained a direct and immediate commercial advantage from the use at issue. And the key cases that have discussed this from this Court are the Bouchot 4 and the Bouchot 5 cases. And those involve the Baltimore Ravens NFL football franchise. And in Bouchot 4, the second use at issue, which was the uses within the Baltimore Ravens lobby, the Court looked at the fact that the Baltimore Ravens lobby was open for the public, and the public could enter freely and look at the various aspects of this lobby. And the Court determined that even though a copyrighted work had been used in that lobby, and the Ravens as a whole were a for-profit, money-making entity, the use at issue was non-commercial because the actual uses of the copyrighted work did not contribute in any meaningful way to the Ravens' overall revenues or profits. And the Court determined that it was non-commercial. And the same was true in both of the uses in Bouchot 5. So the first one at issue were these similar displays in the club level of the Ravens stadium. And of course it cost money to go into the club level and buy tickets to the stadium, but the Court found that these displays were an incidental part of that, and the actual profits that the Ravens got from sales of those tickets were not relying in any way upon, or at least were not relying in any significant way upon the uses of the copyrighted work on the club level. So it is not enough simply that the company is commercial for the first factor to be counted against it. You have to look at the specific use at issue. And the other aspect, and this is what Mr. Diehl said as well, and he agrees with me on this, the Supreme Court has said that the fourth factor, the effect on the market, is undoubtedly the single most important factor of fair use. And where a use is non-commercial, as it was here, the burden shifts under the fourth factor for the copyright holder to show, by a preponderance of the evidence, that some meaningful likelihood of future harm exists. I have a question for you about the creative expression factor. Can you give me an example of a photograph that would not be a, quote, factual depiction of a real world location, person, something real world? I mean, maybe a ghost? Paranormal? I think the potential possibility would be something in a studio. Again, that would be someone placed things in a studio and then took a picture of it. It wouldn't be outside of the studio real world location. Would it be a real world depiction of whatever those things were? Absolutely. But the point we make in our brief is not that the creativity is mitigated simply because the photograph was of a real world location. This court has said that when the secondary user uses a work for its factual content and not for the expressive content, then the creative aspect of the work is mitigated for purposes of the secondary user. In this photograph, you can't tell that that's Adams Morgan. That's part of the creative expression of the photographer, I think. You can't tell by looking at this photograph that that is Adams Morgan. If I'm sitting in Charleston, West Virginia, and I look at that photograph, I don't know where that is. I think it obviously would depend on whether someone has been to Adams Morgan or not. You particularly can't tell from the cropped one. But I think certainly the use here was intended to portray Adams Morgan and show it as a place that people might want to visit. It sounds like you can take issue as a factual matter as to whether you think it effectively portrayed that information or not, but that was certainly the intent. So I want to get back to the market effect factor. When a use is noncommercial, as I said, under Sony, the Supreme Court has said that the burden shifts to the copyright holder to show by the preponderance of the evidence that some meaningful likelihood of future harm exists. Here, there was not even an attempt at such a show. And I have been to Adams Morgan, and I still can't tell that's Adams Morgan in the photograph. I appreciate the clarification. But again, I think that goes more to whether the picture, whether the use adequately conveyed the information that it was meant to. I mean, it sounds like for your Honor's disagreement that it does. But I'm not sure that that is meaningful with respect to whether the use was fair use or not. It's certainly undisputed that the intent was to portray Adams Morgan and provide information about Adams Morgan as a place that one might want to visit. So on the market effect point, however, I think it is absolutely clear that there is no evidence here that there was any actual market effect or any effect on the potential market for the photograph. And this Court has held that a use that does not materially impair the marketability of a copyrighted work generally will be deemed fair. And the Supreme Court, and that was in Sunderman that the Court said that. Well, just because he didn't collect the amount that he asked for from you doesn't mean that he wasn't affected by your use of it. Granted, there's not a huge market, but there's some market. He has sold this picture, and he asked you to reimburse him for it, right? That's correct. Well, then the fact that you didn't doesn't then establish that there is no market effect. I mean, that would be crazy, right? But the test is not whether the fair user, the alleged secondary user, paid a license for the use in question. No, but you're putting the argument to us that there's no market effect. And I think that there's a thin market perhaps for this picture, but we know that he did assert he had a copyright on the picture, copyright. He asked you to pay him for it, and you refused to. So two points of response, Your Honor. The first is the Second Circuit has said, and many have agreed with this point, that if you define the market as the market for the use at issue, the secondary user's use at issue, you risk circular reasoning. Yeah, yeah, I'm not doing it just for this. I just think it's an odd argument for you to be making, but you go ahead. I know that we look at the whole market, not just this particular thing. But, of course, we do have evidence in the record that he is in the whole market. He has paid for this. He has sold prints of the picture, and he has provided one print license, and then he has also gotten two fees paid for others who used the photo, and then he reached out to them to get a retroactive license in lieu of filing litigation. But the other point I was going to make is that the true market effect that courts look at under the fourth factor is whether the secondary user risks usurping the market, whether there are risks acting as a market substitute for the original use. And there is no evidence here that any such market substitution occurred, and certainly not a preponderance of the evidence shown by Mr. Brammer that a substitution occurred. And so the fourth factor, then, the most important factor in the analysis, weighs in favor of fair use here because there is no showing by any actual evidence that there was any effect on the market itself, either the actual market or future potential market. In Supreme Court, it's held. Did you all agree that this could be a trial to the court or something? I'm sorry. You're treating it like it's an appeal from a trial to the court, a trial to the court, that the judge was authorized to try the case. Well, the facts were undisputed, Your Honor. I thought it was up here on summary judgment award. That's correct. That's what I thought. That's absolutely correct. Then you've got to look at it in the light most favorable to the other side. That's correct from a factual standpoint, that you have to take all factual inferences in favor of the party. All the facts go to them. Correct. But the facts were entirely undisputed. So it was not a trial to the court. No, it was not. Right. But to be clear, we presented a statement of undisputed facts in support of our motion for summary judgment, and there was no response from the other side, whether in a specific response to the undisputed facts that they laid out in their brief or any citation to record evidence in response. So the facts before the district court were entirely undisputed, and those are the facts. So your facts were the ones that were agreed to? They were conceded, Your Honor. They were never responded to. So you say taken for admitted by not making a response? Correct, Your Honor. Did the district court say that? He didn't say it explicitly, but the district court, in the facts that they gave you. It was a reward of summary judgment. Correct. So the facts have to be taken in favor of them. If there are factual inferences, if there are genuine issues. Well, the facts have to be, and the inferences are taken in favor of the non-moving party. You were the moving party, and you got summary judgment. Correct. So here we have to give the facts to that side, the other side, not to you, to the other side. But the law is absolutely clear. There's no ifs, ands, or buts about it. You're correct, Your Honor, but the law is absolutely clear that to defeat a properly supported motion for summary judgment, a party cannot respond simply with speculation. They have to point to record evidence from which the trial court could determine whether there was a genuine issue of a genuine dispute of a material fact or not. Sure. That's not inconsistent with what Judge King said. But my point being that there was no effort by the other side to do that. So you cannot argue that the trial court somehow acted improperly by taking the facts as if they were conceded. My point is you were arguing this thing as if you think the court tried the case and made findings and conclusions, and it didn't. It was not a trial to the court. Absolutely. It was never a trial to the court. If that's what I implied. It was a summary judgment award. If that's what I implied, I apologize. No, that's the way you argued, and that's the way it's in the briefs, too. On that point, Your Honor, I do want to address one thing that came up in the reply brief, which was that, and similar on this factual dispute point, was that they argued in their reply that the only way that they could have cast doubt upon certain facts that were put forward in our motion was to take this thing to trial and to cross-examine witnesses about whether there are explanations for it. Frankly, I think that is entirely incorrect because during discovery, they made no effort whatsoever to test Mr. Miko's version of the story. They did not depose Mr. Miko. They asked very basic interrogatories to which we laid out precisely the same story that was in the affidavit that we filed in support of summary judgment. So to say that they did not have the opportunity to test his version of the story is totally incorrect. They certainly had the opportunity to do so, and they had notice of what his story was. They simply failed to engage and take the opportunity to take his deposition. That cannot be held against my client on summary judgment or on appeal. It was incumbent upon them to take that discovery and develop that factual record in order to try and defeat our summary judgment motion. You don't have to use all your time. Well, I would like to say, Your Honor, with respect to the second or third factors, we believe that they also weigh in favor of us here. I think we've laid out our position on those in the briefs. And if you have any questions about those, I'm happy to answer them. And same with respect to the first or fourth factors. But if you have no further questions, I'm happy to be done. I think we're fine. Thank you.  May it please the Court. Let me try to address your question about a friend who sends the picture to their friend and then uses it. What we're talking about here is the infringement is of the display right, which is under 17 U.S. Code Section 106-5. And the display right is a right of public display. And what the defendant did here was publicly display our client's photograph. The definition of public under 17 U.S.C. Section 101 is that it has to be at a place open to the public or at any place where a substantial number of persons outside of a normal circle of family or friends gathers. Okay? So we're not talking about the situation where, you know, your grandchild or your child sends a photograph to their friend and they send it to another friend. We're not talking about that situation. Do you have anything to offer me about limiting this in the world of Internet use? Yes, Your Honor. Good. And that's what the public display, that's why the display right is limited by the public nature of it. And their argument is, right, and this goes to what he just said, we didn't have to depose Mr. Mikos. Okay? This case is not worth the cost of the transcript to depose Mr. Mikos. Unfortunately, for small artists like our client, the only place they can go is federal court, and you don't have to take a deposition to effectively examine somebody at trial. Okay? And the fact of the matter is what he said in his affidavit, all he said in his affidavit, is that he intended to use this photograph for people that were already coming to the festival as information about things to do in the Washington, D.C. area. If that was true, he could have privately emailed to them a description of the Adams Morgan neighborhood. He could have privately emailed to them a photograph he took of the Adams Morgan neighborhood. He could have emailed them some public description of all kinds of things to do in Washington, D.C. He could have done that privately. Can I go back to the distinction between I take a picture and send it to somebody and they take a picture? Yes. In addition to the public versus private nature of that transaction, the other differences are, aren't they, that I don't have copyright on the photographs when I send them out. I'm not selling them for a commercial purpose. I'm not in the business of marketing my photographs. I'm just sharing them with friends. No, sorry, Your Honor. That's not quite correct because you don't have to register your copyright to own the copyright in the photograph. You own it the second that you create it and it's in a tangible form. But the other factors that my colleague mentioned are correct, correct? No. So I thought you would. Again, you don't. I cannot help you people. I do not understand your argument, and I'm feeling like I can see where the district court got to where they did. Yeah, and I think what the district court felt this case was a small case and didn't belong in federal court. But, again, unfortunately, photographers don't have anywhere else to go. We don't have a small claims court. We understand that. Your only argument of the difference between the hypothetical that Judge Motz gave and what's going on here is that what's going on here is public? No, I think there's also a question of consent in that case. Right here, a complete stranger comes and takes the photograph and then uses it for a commercial purpose. And counsel is absolutely wrong about what this court requires for a commercial purpose. Commercial purpose does not require a direct financial benefit. What this court said in the iParadigm's case, Your Honors, is whether you benefit from— Does it also matter that your client took the photograph for a commercial purpose? That shouldn't matter. That matters to the fourth factor, Your Honor, the fourth fair use factor. It doesn't matter to the initial infringement claim. And I think that's the distinction. That's the distinction I'm trying to make is there could be an initial— We're looking at the factors. I'm trying to— Yeah. Wasn't that your— Yeah, I think that maybe I turned it off. I'm interested in limiting the fair use exception. So maybe that's different. That means something different to you than a copyright claim. But now that I'm clear— And then I thought you would go down the four factors. Which is what I was trying to help you do, how this case is different on the four factors than the hypothetical that Judge Motz gave. Can you do that? Maybe I misunderstood your question. I thought you were asking about the initial infringement. Yes. So please do it on the four-factor thing. That's what we need. That's what we're reviewing. Sure. So it's always going to be an infringement, but the question is whether there's an exception. And here, on the commercial purpose factor, it's not whether there's a direct financial benefit. It's whether you benefit from exploiting the work without paying the customary price. And here, there is a functioning, active internet licensing market. Again, he could have taken his own photograph of Adams Morgan. He could have licensed a number of photographs. Some of the amicus briefs pointed out there were free photographs of the Adams Morgan neighborhood. There are 131 neighborhoods in Washington, D.C. And the Infinity Broadcasting case is a very important case from the Second Circuit. And this Court often follows the Second Circuit on copyright matters. In the Infinity Broadcasting case, the Court said, a difference in purpose is not the same thing as transformation, in terms of what the Supreme Court was talking about as transformation in the Campbell v. Ackiff-Rhodes case. And in that case, again, the Court said, if the use has no critical bearing on the substance or style of the original composition, and the infringer merely uses it to avoid the drudgery of making something new, then the claim to fairness in borrowing vanishes. And that's what this defendant did. Okay. Your time has expired. Thank you, Your Honor. We will ask our clerk to adjourn court, and then we'll come down and say hello to the lawyers. Thank you. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Robert B. King, Stephanie D. Thacker